## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **COURTESY PROPERTIES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **S&ME, INC., ATKINS NORTH** | ) | **1:20-cv-2097-SDG** |
| **AMERICA, INC., and CFN (I-20),** | ) | |
| **INC., d/b/a CADILLAC** | ) | |
| **FAIRVIEW,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF LAW
## <u>IN SUPPORT OF CFN'S MOTION TO DISMISS</u>

This case involves the alleged breach of a commercial real estate purchase and sale agreement for the purchase of an undeveloped parcel of property. Based on certain alleged (but denied) contractual and extra-contractual misrepresentations concerning the presence of hazardous materials on the property at issue, Plaintiff Courtesy Properties, LLC asserts claims for breach of contract, fraudulent inducement, and negligent misrepresentation against Defendant CFN (I-20), Inc. ("CFN") Plaintiff's breach of contract claim, however, fails because, according to the plain language of the purchase and sale agreement, the provision Plaintiff seeks to enforce became "void and of no force or effect" in February 2018, six months

after Plaintiff purchased the property. Plaintiff's fraud and negligent misrepresentation claims fair no better, because the purchase and sale agreement, which Plaintiff clearly has affirmed, contains a comprehensive merger provision that effectively bars these tort claims. These tort claims also fail because, according to Plaintiff's own allegations, Plaintiff failed to exercise due diligence as a matter of law. Because all of Plaintiff's underlying claims fail, Plaintiff's derivative claims for attorneys' fees and punitive damages fail as well.

## Summary of Allegations Relevant to this Motion[1]

### A.    Plaintiff purchases the Property from CFN.

Pursuant to a Purchase and Sale Agreement dated October 10, 2016 (the "PSA"), Plaintiff purchased from CFN a parcel of real property located in Dekalb County, Georgia and designated as Parcel "O-NE" in Block "O" of CFN's Mall at Stonecrest project (the "Property"). (Compl., ¶¶ 10, 12-13, Ex. A, Ex. B.)[2] The PSA

---

[1] In deciding a motion to dismiss, all factual allegations in the Complaint are to be construed in the light most favorable to Plaintiff. *See, e.g., Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010). Accordingly, the facts recited herein are the facts alleged in the Complaint. CFN does not admit the accuracy of Plaintiff's allegations.

[2] Plaintiff attached multiple documents as exhibits to the Complaint, including copies of the PSA, as amended, as Exhibit A and the Limited Warranty Deed as Exhibit B. In deciding this motion, the Court should treat the exhibits attached to the Complaint as part of the Complaint, and if the Complaint's allegations about an exhibit conflict with the contents of the exhibit itself, the exhibit controls. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

was amended several times during the course of the negotiations relating to the sale of the Property, with the last amendment dated July 26, 2017. (*Id.* at ¶ 12, Ex. A.) Plaintiff intended to, and eventually did, develop the Property into a commercial automotive dealership. (*Id.* at ¶ 10, Ex. A.) In the Complaint, Plaintiff alleges that, during the negotiations, CFN represented that the Property "had been filled and graded upon and within the applicable industry standards" and that the Property "was free from foreign object debris, trash, and other hazardous substances or waste at levels which would require removal, remediation, or other corrective action." (*Id.* at ¶ 14.)

Pursuant to Section 17 of the PSA, the PSA "supersede[d] all prior discussions and agreements between [Plaintiff] and [CFN] with respect to the Property and contain[ed] the sole and entire understanding between [Plaintiff] and [CFN] with respect thereto." (*Id.* at Ex. A at § 17.) The PSA itself does not include any representation by CFN as to the grading of the Property or the presence of foreign object debris, trash, or waste. (*See id.* at Ex. A at § 5.1.) While Section 5.1(v) of the PSA does include a hazardous materials representation, CFN only represented in this provision that, to its knowledge, other than any hazardous materials identified in certain environmental assessment reports provided to Plaintiff, no additional hazardous materials of the type described in the environmental reports were present

on the Property at levels that required removal under applicable law. (*Id.* at Ex. A at § 5.1(v).)

Pursuant to the PSA, Plaintiff had over a five-month period, commencing on October 10, 2016 and expiring on the March 13, 2017 "Feasibility Date," to terminate the PSA "for any reason or for no reason." (*Id.* at Ex. A at § 7.3.)[3] Plaintiff also had until the March 13, 2017 Feasibility Date "to inspect, examine, conduct surveys and environmental assessments, soil tests, water quality studies, drainage and detention reports, and otherwise do those things on the Property which, in the opinion of the Purchaser, are necessary to determine the physical condition of the Property for Purchaser's Intended Development of the Property." (*Id.* at Ex. A at § 7.1.) By not electing to terminate the PSA prior to the March 13, 2017 Feasibility Date, Plaintiff expressly represented and warranted to CFN in the PSA that Plaintiff "ha[d] fully inspected the Property and agree[d] to purchase the Property wholly 'AS IS, WHERE IS, WITH ALL FAULTS.'" (*Id.* at Ex. A at § 5.3.)

Ultimately, on August 10, 2017, CFN and Plaintiff closed on the Property, and it was conveyed to Plaintiff by a Limited Warranty Deed. (*Id.* at ¶¶ 12-13, Ex. A, Ex. B.) Pursuant to Section 18 of the PSA, only a limited number its provisions

---

[3] The Feasibility Date, initially defined as 90 days after the Date of Agreement, was extended to March 13, 2017. (Compl., Ex. A at § 7.3, Fourth Am. § 2.)

survived the closing. (*Id.* at Ex. A. at § 18.) Notably, Section 18 of the PSA provides that Section 5.1 enumerating all of CFN's representations to Plaintiff shall only survive "for six (6) months following the Closing and shall thereafter immediately terminate and be void and of no force or effect." (*Id.*)

**B.    Plaintiff engages Atkins and S&ME.**

According to the Complaint, in 2008 and 2009, CFN worked with predecessors of Defendants Atkins North America, Inc. and S&ME, Inc., two engineering companies, to prepare the Property and adjoining parcels for development. (Compl., ¶¶ 15-16.) Plaintiff alleges that S&ME's predecessor "performed pre-grading observations at the" Property, and that Atkin's predecessor "prepared a Grading, Drainage, and Utility Plan for property within Blocks 'M, N, & O' of" the Mall at Stonecrest project. (*Id.* at ¶¶ 17, 19.)

On December 20, 2016, Plaintiff and Atkins entered into a Professional Services Agreement, pursuant to which Plaintiff alleges Atkins would provide civil engineering and landscape design services to Plaintiff. (*Id.* at ¶ 20, Ex. C.) The agreement specifically excludes from Atkins' scope of work "[e]nvironmental assessments" and "[g]eotechnical analysis and construction material testing of any kind or type." (*Id.* at Ex. C at p. 6.) It also provides that "[a]ll investigations normally

required as the basis of sitework construction," such as "a sub-surface geotechnical engineering report," "must be made available to Atkins." (*Id.* at Ex. C at p. 3.)

On August 21, 2017, after the Property had been conveyed to Plaintiff, S&ME submitted to Plaintiff a Proposal for Geotechnical Exploration, which led to an agreement between S&ME and Plaintiff regarding the proposed services. (*Id.* at ¶¶ 22, 24, Ex. D.)[4] Pursuant to this agreement, S&ME allegedly "performed subsurface exploration of the [] Property," which "included tests borings and drillings." (*Id.* at ¶ 24.) S&ME then prepared a Report for Geotechnical Exploration based on its testing and exploration on September 22, 2017. (*Id.* at ¶ 25, Ex. E.)

## C.    Plaintiff allegedly discovers discrepancies with S&ME's reports.

In April 2018, well over six months after closing, Plaintiff broke ground on the Property to prepare it for construction of a car dealership. (Compl., ¶ 27.) Soon thereafter, Plaintiff allegedly made findings on the Property which contradicted S&ME's September 22, 2017 report and a later May 3, 2018 report also by S&ME. (*Id.* at ¶¶ 27-31.) Specifically, Plaintiff alleges that foreign objects, including plastic containers, canvas straps, hydraulic hoses, automotive tires, and tree trunks, were

---

[4] While the Proposal for Geotechnical Exploration bears the date August 21, 2016, the dates in the body of the proposal, the attached agreement, and S&ME's subsequent reports all show that this is a typo and that actual date of the Proposal for Geotechnical Exploration is August 21, 2017. (Compl., Ex. D, Ex. E, Ex. F.)

discovered beneath the Property. (*Id.* at ¶¶ 32-33.) Plaintiff also claims that the soil on the Property contained "unsuitable fill material" that had to be removed from the site. (*Id.* at ¶ 34.)

Plaintiff alleges that CFN, and the other defendants, had a duty to disclose the state of the soil on the Property, including "the presence of foreign object debris, trash, unsuitable fill, and other hazardous substances or waste," but that all the defendants omitted and concealed this information. (*Id.* at ¶¶ 40-41.) Plaintiff alleges it has incurred $2,000,000 in damages, including alleged costs incurred to correct unspecified "errors" and to address construction delays, as a result of CFN's purported conduct. (*Id.* at ¶ 45.) While Plaintiff seeks to recover these damages, it does not seek to rescind the PSA or to reverse the sale of the Property. (*Id.* at p. 23.)

## Applicable Legal Standard

In addressing a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains sufficient factual matter, accepted as true, to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The facial plausibility standard requires pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1312 (11th Cir. 2015)

(quoting *Iqbal*, 556 U.S. at 678). The court is not obligated, however, to assume the truth of "naked assertions devoid of further factual enhancement." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Nor is the court obligated to assume the veracity of a pleading's legal conclusions drawn from the facts alleged. *Chandler v. Secretary of Florida Dept. of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012).

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Then, looking to any well-pleaded facts, the court must find them sufficient "to infer more than the mere possibility of misconduct," and the complaint must show that the pleader is entitled to relief. *Id.* "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The Court should dismiss a complaint that fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## <u>Argument and Citation of Authority</u>

Plaintiff asserts six counts against CFN: (1) breach of contract, (2) fraud, (3) negligent misrepresentation, (4) punitive damages, (5) contractual attorneys' fees, and (6) statutory attorneys' fees. Because each purported cause of action fails to state

a viable claim against CFN, the Court should dismiss all claims asserted against CFN with prejudice.

**A.      Plaintiff's breach of contract claim against CFN fails because it misconstrues the plain language of the PSA, and in any event, the actual representation made by CFN in the PSA is void and unenforceable.**

Plaintiff alleges that CFN breached its representation in the PSA "that there were not any hazardous materials present on the [] Property at levels which required removal, remediation, or other corrective action" and that "[CFN's] actions, as set forth in this Complaint, constitute a breach of contract." (Compl., ¶¶ 51-52.) This claim fails for two discrete reasons. First, as is readily apparent in the PSA itself, which is attached to the Complaint, Plaintiff has plainly overreached by mischaracterizing the actual representation made by CFN in Section 5.1(v) of the PSA. Second, regardless of this provision's actual language, pursuant to the plain terms of the PSA, this provision became void and of no force or effect in February 2018.

Plaintiff plainly misstates the scope of the PSA's hazardous materials representation. CFN did not represent that there was not <u>any type</u> of hazardous materials on the Property that required <u>any type</u> of removal, remediation, or other corrective action. On the contrary, CFN's actual representation in Section 5.1(v) was far more limited:

> Except as may otherwise be provided in [two environmental assessment reports provided to Plaintiff], **to [CFN's] knowledge** no hazardous materials (**as described in such reports**) are present on the Property at levels that require removal, remediation or other corrective action **under applicable laws, ordinances, rules and regulations in effect and applicable to the Property on such date**.

(*Id.* at Ex. A at § 5.1(v)) (emphasis added).[5] Notably, Plaintiff does not allege that the car tires and other objects allegedly found on the Property amount to "hazardous materials" as described in the environmental reports. Plaintiff also does not allege that any law required it to remove these alleged objects. Accordingly, the Complaint does not even allege facts amounting to an actual violation of the PSA.

Regardless, even if Plaintiff's breach of contract claim is based on the actual representations contained in Section 5.1(v) of the PSA, Plaintiff could not possibly state a viable breach of contract claim based on those representations because they terminated six months after the parties closed on the Property. To state a claim for breach of contract, a plaintiff must allege facts showing the existence of a valid and enforceable contract. *See Muckle v. UNCF*, 930 F. Supp. 2d 1355, 1359 (N.D. Ga. 2012) (granting motion to dismiss breach of contract claim). As a result, where the only provisions of the contract the plaintiff alleges the defendant breached are void

---

[5] Section 5.1(v) further provided that CFN made "no representation or warranty to the accuracy or otherwise regarding any assessments or reports provided to [Plaintiff]." (Compl., Ex. A at § 5.1(v).)

and unenforceable, the plaintiff's breach of contract claim must be dismissed for failure to state a claim. *See Prudential Ins. Co. of Am. v. Baum*, 629 F. Supp. 466, 468-72, 474 (N.D. Ga. 1986) (granting motion to dismiss breach of contract claim because "the contract provisions on which the [plaintiff] bases its claim for breach of contract are unenforceable and void").

Pursuant to the plain language of the PSA, Section 5.1(v), the only contractual provision Plaintiff alleges CFN has violated, is unenforceable. The "Survival" section of the PSA specifically provides that the PSA "shall not survive Closing, except for . . . (ii) the provisions of <u>Section 5.1</u>, which shall survive the Closing for six (6) months following the Closing and shall thereafter immediately terminate and be void and of no force or effect." (Compl., Ex. A at § 18.) This section provides a limited six-month exception to the "general law of survival of terms and conditions" of a sales contract, which "is that those [terms and conditions] found in the sales contract do not survive the closing unless specifically reserved or unless they are not performed by delivery and acceptance of the deed." *Savage v. KGE Assocs. Ltd. P'ship*, 260 Ga. App. 770, 774 (2003). Put differently, as allowed under Georgia law, Plaintiff agreed to contractually limit CFN's liability and to waive its right to allege a violation of the representations in Section 5.1 after six months from the date of closing. *See Cobra Tactical, Inc. v. Payment All. Int'l Inc.*, 315 F. Supp. 3d 1342,

1350 (N.D. Ga. 2018) (granting motion to dismiss breach of contract claim in light of contractual limitation of liability); *Worker's Comp. Legal Clinic of Louisiana v. BellSouth Telecommunications, Inc.*, 374 F. Supp. 2d 1215, 1218 (N.D. Ga. 2005) ("Absent a countervailing public policy interest, parties are free to contract to waive rights, including the right to recourse in the event of breach by the other party."). Plaintiff's waiver of its right to assert an alleged violation of the representations in Section 5.1 after six months from the closing is plainly reasonable and consistent with public policy as it is actually a six-month expansion of a purchaser's general rights to enforce representations in a sales contract after closing. *See Savage*, 260 Ga. App. at 774.

According to Plaintiff, the closing on the Property occurred on August 10, 2017. (*Id.* at ¶ 13.) Thus, as the PSA makes abundantly clear, the representations in Section 5.1 "terminated and be[came] void and of no force or effect" on February 10, 2018—two months before Plaintiff broke ground on the car dealership and over two years before Plaintiff filed this suit. (*Id.* at Ex. A at § 18.) The representations in Section 5.1, including the hazardous materials representation, have not survived and simply do not exist, and Plaintiff therefore cannot state a breach of contract claim based on an alleged violation of such representations. *See Bickerstaff Real Estate Management, LLC v. Hanners*, 292 Ga. App. 554, 555-58 (2008) (holding

purchaser's breach of contract claim against seller alleging violation of seller's hazardous materials representation in purchase and sale agreement failed as a matter of law because the allegedly violated representation did not survive the closing). Accordingly, because the only contractual provision Plaintiff alleges CFN breached is void and unenforceable, the Court should dismiss Plaintiff's breach of contract claim with prejudice. *See Prudential Ins. Co. of Am.*, 629 F. Supp. at 468-72, 474; *see also Advance Tech. Consultants, Inc. v. Roadtrac, LLC*, 250 Ga. App. 317, 317 (2001) (reversing trial court's denial of defendant's motion to dismiss breach of contract claim because the allegedly breached contractual provisions were not enforceable).

**B.    Plaintiff's fraudulent inducement and negligent misrepresentation claims against CFN are barred by the PSA's merger provision and by Plaintiff's failure to exercise due diligence.**

**1.    The PSA's merger provision bars Plaintiff's fraudulent inducement and negligent misrepresentation claims.**

At the outset, Plaintiff's claims for fraudulent inducement and negligent misrepresentation against CFN must be dismissed because the PSA's merger provision bars these claims. Under Georgia law, "a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud. . . . Furthermore, where the allegedly defrauded party affirms a

contract which contains a merger or disclaimer provision and retains the benefits, he is estopped from asserting that he relied upon the other party's misrepresentation and his action for fraud must fail." *Ekeledo v. Amporful*, 281 Ga. 817, 819 (2007) (citations omitted). "[T]his principle bars not only fraud claims based upon the alleged, pre-contract misrepresentations, but all tort claims based upon such misrepresentations." *Infinity Transportation III LLC v. XPO Intermodal, Inc.*, 304 F. Supp. 3d 1320, 1330 (N.D. Ga. 2018).

Here, there can be no question that Plaintiff has chosen to affirm the PSA and sue for damages. Indeed, Plaintiff's Complaint includes a count for breach of contract, (Compl., ¶¶ 50-53), and there is no suggestion in the Complaint (nor could there be) that Plaintiff ever attempted, much less promptly attempted, to rescind the transaction. (*See generally id.*) Moreover, Section 17 of the PSA sets forth the following merger provision:

> This Agreement supersedes all prior discussions and agreements between Seller and Purchaser with respect to the Property and contains the sole and entire understanding between Seller and Purchaser with respect thereto. All promises, inducements, offers, letters of intent, solicitations, agreements, commitments, representations, and warranties heretofore made between such parties with respect to the Property are merged into this Agreement. This Agreement shall not be modified or amended in any respect except by a written instrument executed by or on behalf of each Purchaser and Seller.

(*Id.* at Ex. A at § 17.)[6] Thus, Plaintiff is estopped from asserting that it relied on any representation made by CFN outside of the contract.

Despite this clear merger provision, Plaintiff alleges that, in order to induce it to execute the PSA and amendments, CFN misrepresented that the Property "had been filled and graded upon and within the applicable industry standards" and that the Property "was free from foreign object debris, trash, and other hazardous substances or waste at levels which would require removal, remediation, or other corrective action." (Compl., ¶¶ 14, 64-65.) The PSA, however, contains no such representation. (*See id.*, Ex. A at § 5.1.) Any such alleged misrepresentation would, therefore, have had to have been made outside of the PSA, and as pointed out above, Plaintiff is "estopped from bringing fraud claims based on [such] alleged [extra-contractual] misrepresentations." *Infinity Transportation III LLC*, 304 F. Supp. 3d at 1330 (dismissing for failure to state a claim fraud and negligent misrepresentation claims based on extra-contractual representations).

Nor can Plaintiff bring claims in tort against CFN based on representations made in the PSA. While a "merger clause will not bar claims based on misrepresentations made in the contract itself," any claim based on such

---

[6] Unlike Section 5.1(v), which only survived past the closing for six months, Section 17 survived closing without limitation. (Compl., Ex. A at § 18.)

misrepresentations is properly brought in contract, rather than in tort. *Infinity Transportation III LLC*, 304 F. Supp. 3d at 1330. Accordingly, the fact that Plaintiff's fraud claim at least appears to be partially based on the PSA's hazardous materials representation, (Compl., ¶ 14), cannot save Plaintiff's fraud claim from dismissal. Similarly, Plaintiff's negligent misrepresentation claim, to the extent it is based on the PSA's hazardous materials representation, "must also be dismissed as [an] improper attempt[] to repackage its breach of contract claim into various torts." *Infinity Transportation III LLC*, 304 F. Supp. 3d at 1331.

CFN notes that Plaintiff at least appears to couch its fraud claim as one based on concealment, alleging that CFN "concealed the presence of [foreign object debris, trash, unsuitable fill, and other hazardous substances or waste] from the Plaintiff" and "concealed information from the Plaintiff about the true state of the soil at the [] Property." (Compl., ¶¶ 40-41.) To the extent Plaintiff is asserting a fraudulent concealment claim, that claim would be barred as a matter of law:

> Georgia law is abundantly clear that an obligation to disclose must exist before a party may be held liable for fraud based upon the concealment of material facts. In the absence of a confidential relationship, no duty to disclose exists when parties are engaged in arm's-length business negotiations; in fact, an arm's-length relationship by its nature excludes a confidential relationship.

*Infrasource, Inc. v. Hahn Yalena Corp.*, 272 Ga. App. 703, 705 (2005) (citation and punctuation omitted). The Complaint's allegations show that the purchase and sale

of the Property pursuant to the PSA was an arm's-length transaction between sophisticated parties pertaining to commercial real estate. (Compl., ¶¶ 1, 6, 10, 12, Ex. A at § 5.2.)[7] CFN simply had no duty to disclose, and fraudulent concealment is inapplicable as a theory of liability. *Partner Servs., Inc. v. Avanade, Inc.*, No. 1:13-CV-0001-AT, 2013 WL 12180442, at *8 (N.D. Ga. Aug. 26, 2013) (holding contractual merger clause mandated dismissal of fraud claim framed as fraudulent concealment because "the 'fraudulent concealment' theory of liability appears limited to claims arising out of the residential purchase of property"); *see also Weed Wizard Acquisition Corp. v. A.A.B.B.*, Inc., 201 F. Supp. 2d 1252, 1259 (N.D. Ga. 2002) ("[T]o the extent that Plaintiff's fraud claim is based on non-disclosure or concealment, Plaintiff has not alleged that the transaction was not an arm's length transaction or that any special or confidential relationship existed between Plaintiff and Defendants to create a duty to disclose.").

Furthermore, because Plaintiff alleges elsewhere in the Complaint that CFN actively misrepresented the very same information, (Compl., ¶ 14), Plaintiff's introduction of concealment-related allegations cannot save its fraud-based claims

---

[7] Plaintiff warranted in the PSA that it "has the knowledge and experience in financial and business matters to enable [it] to evaluate the merits and risks of the transaction contemplated by [the PSA], and that [it] is not [in] a disparate bargaining position relative to Seller with respect to [the PSA]." (Compl., Ex. A at § 5.2.)

from dismissal. *Partner Servs., Inc.*, 2013 WL 12180442, at *8 (granting motion to dismiss fraud and negligent misrepresentation claims and noting that plaintiff's "[c]haracterizing alleged misrepresentations as omissions does not save [its] inducement claims in the face of the merger clause in the affirmed agreement").

The PSA's merger provision is a comprehensive bar to Plaintiff's fraud and negligent misrepresentation claims. Under black letter Georgia law, CFN's alleged (but denied) extra-contractual representations cannot form the basis of a viable fraudulent inducement or negligent misrepresentation claim, and Plaintiff cannot circumvent this result by misguidedly framing its fraud-based claims as concealment or as being based on actual language contained in the PSA. Fraudulent concealment simply does not apply here. And, to the extent Plaintiff premises its fraud claims on the allegation that CFN breached a representation in the PSA itself, such a claim "is properly brought as a breach of contract claim." *Infinity Transportation III LLC*, 304 F. Supp. 3d at 1330. The Court should therefore dismiss Plaintiff's fraud and negligent misrepresentation claims against CFN with prejudice.

### 2. Plaintiff's failure to exercise due diligence bars its fraud and negligent misrepresentation claims.

The Court should dismiss Plaintiff's fraud and negligent misrepresentation claims for the separate and independent reason that Plaintiff's allegations reveal very clearly that Plaintiff failed to exercise due diligence as a matter of law. In order to

state a claim for fraud or negligent misrepresentation, a plaintiff must allege facts showing that it "actually and justifiably relied on the representation forming the basis of [its] claim." *C & C Family Tr. 04/04/05 ex rel. Cox-Ott v. AXA Equitable Life Ins. Co.*, 44 F. Supp. 3d 1247, 1253, 1259 (N.D. Ga. 2014) (citations and punctuation omitted). "To establish reasonable reliance under Georgia law as to either fraud or negligent misrepresentation, a plaintiff must show that it exercised due diligence." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1289 (11th Cir. 2007). Additionally, "Georgia law places a significant due diligence burden on sophisticated parties engaged in arms-length transactions." *Tri-State Consumer Ins. Co. v. LexisNexis Risk Sols. Inc.*, 823 F. Supp. 2d 1306, 1320 (N.D. Ga. 2011) (citation and punctuation omitted) (granting motion to dismiss fraud claim). "Indeed, a sophisticated party to an arms-length business transaction cannot recover where he blindly relied on the representations of the (other party) as to matters of which he could have informed himself." *Private Label Nutraceuticals, LLC v. Hangover Joe's Holding Corp.*, No. 1:14-CV-683-ODE, 2014 WL 12695801, at *6 (N.D. Ga. Nov. 20, 2014) (citation and punctuation omitted) (dismissing fraud and negligent misrepresentation claims for failure to state a claim).

According to the Complaint, the alleged representations upon which Plaintiff bases its fraud and negligent misrepresentation claims all pertain to the condition of

the Property, specifically the state of the soil and the existence of subsurface objects. (Compl., ¶¶ 14, 40-41.) The Complaint further alleges that Plaintiff discovered these conditions through conducting geotechnical examinations and other physical inspections of the Property just a few months after closing on the Property. (*Id.* at ¶¶ 31-34.) Plaintiff, however, does not allege that it conducted any such geotechnical examinations or subsurface exploration before the August 10, 2017 closing. (*Id.* at ¶¶ 13, 24-25.) Thus, rather than exercising due diligence to inform itself as to the condition of Property before closing, Plaintiff (according to its own allegations) blindly relied on CFN's alleged (but denied) representations, "which is unjustified as a matter of law." *Hartsfield v. Union City Chrysler-Plymouth*, 218 Ga. App. 873, 876 (1995) (granting motion to dismiss fraud claim).

Plaintiff had ample opportunity to fully inspect the Property prior to committing to purchase it. Pursuant to the PSA, Plaintiff had from October 10, 2016 to March 13, 2017 "to inspect, examine, conduct surveys and environmental assessments, soil tests, water quality studies, drainage and detention reports, and otherwise do those things on the Property which, in the opinion of the Purchaser, are necessary to determine the physical condition of the Property for Purchaser's Intended Development of the Property." (Compl., Ex. A at § 7.1.) Plaintiff, however, according to its own allegations, failed to do so.

CFN further notes that Plaintiff had the right to terminate the PSA at any time prior to March 13, 2017 if it believed that the Property was not suitable for its purpose, or for any other reason. (*Id.* at Ex. A at § 7.3.) Plaintiff obviously did not do so, and, according to the express language of the PSA, by not electing to terminate the PSA, Plaintiff represented and warranted to CFN that it "ha[d] fully inspected the Property and agree[d] to purchase the Property wholly 'AS IS, WHERE IS, WITH ALL FAULTS.'" (*Id.* at Ex. A at § 5.3.)

Plaintiff, a sophisticated party, had over five months to fully inspect the Property and to terminate the PSA if it did not like what it discovered. Instead of availing itself of that opportunity, and in breach of its warranty to the contrary, Plaintiff waited until after the closing to conduct any geotechnical or subsurface analysis of the Property. Only after doing so did it allegedly discover that the condition of the Property differed from CFN's alleged (but denied) representations. "[B]ecause a cause of action for fraud will not lie where the party alleging the fraud had equal and ample opportunity to prevent it and yet made it possible through the failure to exercise due diligence," Plaintiff cannot allege justifiable reliance as a matter of law and cannot state a claim for fraud or negligent misrepresentation. *C & C Family Tr.*, 44 F. Supp. 3d at 1259-60 (N.D. Ga. 2014) (citations and punctuation omitted) (granting motion to dismiss fraud and negligent misrepresentation claims).

**C.     Plaintiff's derivative punitive damages and attorneys' fees claims fail.**

The last three claims Plaintiff asserts against CFN—Count Eight for punitive damages, Count Nine for contractual attorneys' fees pursuant to O.C.G.A. § 13-1-11, and Count Ten for statutory attorneys' fees pursuant to O.C.G.A. § 13-6-11—all fail because they are wholly derivative of Plaintiff's other failed claims.

Plaintiff's punitive damages and O.C.G.A. § 13-6-11 attorneys' fees claims do not state independent causes of action. Accordingly, because Plaintiff's breach of contract, fraud, and negligent misrepresentation claims against CFN all fail as a matter of law, its punitive damages and O.C.G.A. § 13-6-11 attorneys' fees claims must also be dismissed. *See, e.g., Lee v. Georgia Power*, 296 Ga. App. 719, 721 (2009) ("An award of attorney fees and expenses of litigation under O.C.G.A. § 13-6-11 is ancillary, and a party may recover them only if the jury finds in favor on another claim."); *Burns v. Dees*, 252 Ga. App. 598, 608 (2001) ("As [plaintiff] has not prevailed on any of his enumerations, his claim for attorney fees and punitive damages must fail."); *Massey v. Kelly, Inc.*, 742 F. Supp. 1156, 1158 (N.D. Ga. 1990) ("[T]he Georgia statute for punitive damages is not grounds for an independent cause of action.").

Further, because contract and negligence claims do not authorize punitive damages, the Court must dismiss Plaintiff's punitive damages claim even if the only

other claim it dismisses is the fraud claim. *See Paul Dean Corp. v. Kilgore*, 252 Ga. App. 587, 593 (2001) ("It is axiomatic that punitive damages are not recoverable for breach of contract, even if the breaching party acted in bad faith.") (citation and punctuation omitted); *MDC Blackshear, LLC v. Littell*, 273 Ga. 169, 173 (2000) ("Negligence alone, even gross negligence, is insufficient to support punitive damages.").

Plaintiff's last remaining cause of action appears to be one for contractual attorneys' fees, based on O.C.G.A. § 13-1-11. That statute, however, does not apply to or control Plaintiff's contractual attorneys' fees claim because the PSA is not a note or other evidence of indebtedness. *See Eagle Jets, LLC v. Atlanta Jet, Inc.*, 347 Ga. App. 567, 570-72 (2018). Nevertheless, Section 36 of the PSA authorizes the prevailing party in an action brought as a result of an alleged default under the PSA to recover costs and reasonable attorneys' fees from the non-prevailing party. (Compl., Ex A. at § 36.) But even assuming that Plaintiff intended Count Nine to be a claim under Section 36 of the PSA, this claim must fail because Plaintiff's underlying breach of contract claim fails. *See Benchmark Builders, Inc. v. Schultz*, 294 Ga. 12, 14 (2013) (recognizing that a plaintiff must obtain some affirmative relief on its breach of contract claim to be deemed a prevailing party).

## **Conclusion**

Plaintiff is bound by the plain terms of the PSA it negotiated at arm's length with CFN. Pursuant to that contract, CFN's representation in the PSA regarding hazardous materials on the Property did not survive past February 10, 2018 and is now void and of no force or effect. Plaintiff, therefore, simply cannot state a viable breach of contract claim based on an alleged breach of that representation. As to Plaintiff's fraud-based claims, they fail because Plaintiff is estopped from relying on any extra-contractual representations allegedly made by CFN. Nor can Plaintiff's apparent attempts to couch these tort claims as being based on the actual language of the PSA or on alleged concealment save these claims. For these and the additional reasons set forth above, Plaintiff's breach of contract, fraud, and negligent misrepresentation claims, and its derivative punitive damages and attorneys' fees claims, all fail as a matter of law. As a result, the Court should dismiss all claims asserted against CFN in the Complaint with prejudice.

[SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted this 22nd day of May, 2020.

**PARKER, HUDSON, RAINER & DOBBS LLP**

*/s/ V. Justin Arpey*
V. Justin Arpey
Georgia Bar No. 023753
John H. Elliott
Georgia Bar No. 350612
303 Peachtree Street, NE, Suite 3600
Atlanta, Georgia 30308
vja@phrd.com
jell@phrd.com
Telephone: 404-523-5300
Facsimile: 404-522-8409

*Counsel for Defendant CFN*

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with Local Rule 7.1(D), I certify that the foregoing document has been prepared in conformity with Local Rule 5.1. This memorandum was prepared with Times New Roman (14 point) type, with a top margin of one and one-half (1 ½) inches and a left margin of one (1) inch.

This 22nd day of May, 2020.

*/s/ V. Justin Arpey*
V. Justin Arpey

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the within and foregoing

**MEMORANDUM OF LAW IN SUPPORT OF CFN'S MOTION TO DISMISS**

upon all parties to this matter by electronically filing a copy of same with the Court's

CM/ECF system, which will automatically send an electronic copy to all counsel of

record.

This 22nd day of May, 2020.

*/s/ V. Justin Arpey*
V. Justin Arpey