IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COURTESY PROPERTIES, LLC,

     Plaintiff,

             v.

S&ME, INC.; ATKINS NORTH AMERICA,
INC.; and CFN (I-20), INC., d/b/a CADILLAC
FAIRVIEW,

     Defendants.

Civil Action No.
1:20-cv-02097-SDG

## OPINION AND ORDER

This matter is before the Court on separate motions to dismiss filed by

(1) Defendant CFN (I-20), Inc., d/b/a Cadillac Fairview (Cadillac Fairview)

[ECF 26]; (2) Defendant Atkins North America, Inc. (Atkins) [ECF 31]; and

(3) Defendant S&ME, Inc. (S&ME) [ECF 36]. S&ME has also filed a motion to strike,

or in the alternative an objection to, the affidavit of Dennis A. Huckaba, P.E.

(hereafter, the Huckaba Affidavit) [ECF 34]. For the following reasons, Cadillac

Fairview's motion is **GRANTED**; Atkins's motion is **GRANTED IN PART and**

**DENIED IN PART**; S&ME's motion to strike is **DENIED**, and its motion to

dismiss is **GRANTED IN PART and DENIED IN PART**.

## I.   BACKGROUND[1]

Plaintiff Courtesy Properties, LLC (Courtesy) is the owner of real property in Stonecrest, Georgia that is currently the location of an automotive dealership known as "Courtesy Chrysler Dodge Jeep Ram" (the Property).[2] On October 10, 2016, Courtesy agreed to purchase the Property from Cadillac Fairview pursuant to a Purchase and Sales Agreement (the Purchase Agreement).[3] Courtesy and Cadillac Fairview closed on the sale of the Property on August 10, 2017.[4] Cadillac Fairview conveyed the Property to Courtesy through a Limited Warranty Deed.[5] According to Courtesy, prior to closing, Cadillac Fairview represented that (1) it had filed and graded the Property to a padded condition (*i.e.*, pad ready) so that a purchaser could begin construction on the site with minimal ground

---

[1]   The Court treats the following allegations as true for the purposes of this Order. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2]   ECF 19, ¶ 7.

[3]   *Id.* ¶ 9. *See* ECF 19-1 (Purchase Agreement).

[4]   ECF 19, ¶ 11.

[5]   *Id. See* ECF 19-2 (Limited Warranty Deed).

improvements; and (2) the Property did not contain foreign object debris, trash, and other hazardous substances or wastes.[6]

S&ME's and Atkins's alleged involvement in the events leading to this action predates Courtesy's purchase of the Property. In 2008 and 2009, Cadillac Fairview engaged two separate companies—QORE, Inc. (QORE) and The PBSJ Corporation (PBSJ)—to perform engineering and design services on the Property to prepare it for commercial development.[7] For example, in 2008, QORE performed pre-grading observations at the Property and prepared various reports and plans.[8] That same year, PBSJ prepared a "Grading, Drainage, and Utility Plan" for the Property.[9] Since at least 2008, PBSJ employed George N. Kakunes as a project civil engineer, whom Courtesy alleges "had personal and actual knowledge of the true subsurface conditions of the [ ] Property" because he attended many on-site meetings and "actively consulted and advised Cadillac Fairview in how to get the [ ] Property to a pad-ready condition."[10] In 2010, S&ME

---

[6]   ECF 19, ¶¶ 8, 12.

[7]   *Id*. ¶¶ 15–16.

[8]   *Id*. ¶¶ 17–18.

[9]   *Id*. ¶ 18.

[10]   *Id*. ¶¶ 16, 20.

acquired QORE and Atkins acquired PBSJ.[11] Since at least 2016, Kakunes has been employed by Atkins.[12]

Prior to closing on the Property, on December 20, 2016, Courtesy entered into a Professional Service Agreement with Atkins for the latter to provide civil engineering and landscape design services (the Atkins Agreement).[13] According to Courtesy, Atkins made representations—premised on PBSJ's and Atkins's prior experience with the Property—that it would provide Courtesy with a "superior end-product and more accurate results" than its competitors.[14]

In August 2016, S&ME prepared a report entitled "Proposal for Geotechnical Exploration" for the Property, which outlined the scope of geotechnical services it would offer to Courtesy.[15] Similar to Atkins, S&ME also made representations as to QORE's and S&ME's own prior knowledge of the Property.[16] On August 29, 2017, Courtesy entered into an Agreement for Services

---

[11]   *Id*. ¶ 13.

[12]   *Id*. ¶ 14.

[13]   *Id*. ¶ 21. *See* ECF 19-3 (Atkins Agreement).

[14]   ECF 19, ¶ 22.

[15]   *Id*. ¶ 23.

[16]   *Id*. ¶ 24.

with S&ME (the S&ME Agreement).[17] S&ME then performed subsurface exploration of the Property, which included test "borings and drillings."[18] Following these tests, on September 22, 2017, S&ME issued a "Report of Geotechnical Exploration" (the First S&ME Report) to Courtesy, which included conclusions and recommendations as to future construction on the Property.[19]

In April 2018, Courtesy broke ground to commence its construction on the Property and discovered the First S&ME Report contained incorrect information regarding the amount of topsoil present at the site.[20] Courtesy also discovered an unreported type of fill rock within the topsoil.[21] As a result, on April 10, 2018, Courtesy halted construction operations.[22] On April 27, Courtesy held an on-site meeting with representatives of S&ME and Atkins during which samples were collected from the previously excavated locations.[23] Based on those samples, on May 3, 2018, S&ME issued its "Measurement of Upper Soil Layer and Organic

---

[17]  *Id.* ¶ 25. *See* ECF 19-4 (S&ME Agreement).

[18]  ECF 19, ¶ 25.

[19]  *Id.* ¶ 26. *See* ECF 19-5 (First S&ME Report).

[20]  ECF 19, ¶ 28.

[21]  *Id.*

[22]  *Id.*

[23]  *Id.* ¶ 29.

Content Test Results" (the Second S&ME Report) and noted the topsoil's thickness ranged from two-to-twenty-two inches in depth.[24] This contradicted the results of an April 21, 2018 independent geotechnical examination performed on the Property by Soil Profiles, Inc., which found the topsoil's thickness ranging from five-to-twenty inches.[25] The report issued by Soil Profiles also uncovered the presence of previously undisclosed foreign objects buried three-to-four feet below the Property's surface, including plastic containers, canvas straps, and hydraulic hoses.[26] Courtesy performed additional excavations on the Property and discovered over 200 scrap automotive tires and several tree trunks buried in the upper-northeast portion.[27] Courtesy also discovered that unsuitable fill materials had been placed into the site, which Courtesy needed to excavate and replace with suitable materials before restarting construction.[28] On June 1, 2018, Courtesy terminated its agreements with Atkins and S&ME.[29]

---

[24] *Id*. ¶ 30.

[25] *Id*. ¶ 31.

[26] *Id*. ¶ 32.

[27] *Id*. ¶ 33.

[28] *Id*. ¶ 34.

[29] *Id*. ¶ 35.

Courtesy initiated this action in the State Court of DeKalb County, Georgia on April 14, 2020.[30] On May 18, 2020, Cadillac Fairview removed the case to this Court.[31] On June 12, 2020, Courtesy filed its First Amended Complaint and asserted nine claims for: breach of contract (Counts I–III); fraud (Counts IV and V); negligent misrepresentation (Count VI); negligence/gross negligence (Count VII); punitive damages (Count VIII); and attorneys' fees (Count IX).[32] According to Courtesy, it has suffered in excess of $2 million in damages.[33]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

---

[30]   ECF 1-1.

[31]   ECF 1. Atkins submitted its consent to the removal in the notice of removal itself [ECF 1-2]. S&ME was not served until May 26, 2020, and filed its notice of consent of removal on June 25, 2020 [ECF 27].

[32]   *See generally* ECF 19.

[33]   ECF 19, ¶ 47.

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

This pleading standard "does not require detailed factual allegations," but "requires more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678) (brackets omitted). A complaint providing "mere 'labels and conclusions,' 'formulaic recitations of the elements of a cause of action,' or 'naked assertions devoid of further factual enhancement'" will not suffice. *Kinsey v. MLH Fin. Servs., Inc.*, 509 F. App'x 852, 853 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Although the "plausibility standard is not akin to a probability requirement at the pleading stage," it demands "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (citing *Twombly*, 550 U.S. at 556).

## III.   DISCUSSION

Each named Defendant has filed a separate motion to dismiss. These motions challenge all claims asserted in the Amended Complaint. The Court addresses each separate motion in turn.

### a.      Cadillac Fairview's Motion to Dismiss

On June 25, 2020, Cadillac Fairview filed its motion to dismiss.[34]
Courtesy filed its response in opposition to Cadillac Fairview's motion on July 9,
2020.[35] Cadillac Fairview filed its reply on July 23.[36]

### i.      Breach of Contract Against Cadillac Fairview (Count II)

Courtesy alleges Cadillac Fairview breached the Purchase Agreement by
"represent[ing] that there were not any hazardous materials present on the [ ]
Property at levels which required removal, remediation, or other corrective
action." In Georgia,[37] the elements of a breach of contract claim are "(1) breach and
the (2) resultant damages (3) to the party who has the right to complain about the
contract being broken." *UWork.com, Inc. v. Paragon Techs., Inc.*, 321 Ga. App. 584,
590 (2013) (citing *Norton v. Budget Rent A Car System*, 307 Ga. App. 501, 502 (2010)).
As a threshold matter, Courtesy must allege specific facts showing a valid and
enforceable contract. *See Neibert v. Computer Scis. Corp.*, No. 1:12-cv-02277-SCJ,

---

[34]    ECF 26.

[35]    ECF 35.

[36]    ECF 43.

[37]    The parties agree that Georgia law governs all the claims in this action.

2014 WL 11462721, at *7 (N.D. Ga. Feb. 4, 2014) ("[W]ithout a valid contract, a breach of contract claim does not exist.").

In the Amended Complaint, Courtesy alleges Cadillac Fairview breached Section 5.1 of the Purchase Agreement.[38] Cadillac Fairview argues the claim must be dismissed because the relied-on representation in Section 5.1 extinguished after closing pursuant to the Purchase Agreement's survival provision. According to the survival provision:

> This Agreement shall not be merged into the instruments or documents executed and delivered at the Closing and shall not survive Closing, except for the provisions of . . . Section 5.1, which ***shall survive the Closing for six (6) months following the Closing and shall thereafter immediately terminate and be void and of no force or effect***.[39]

Cadillac Fairview argues that, since its representation in Section 5.1 became void and unenforceable six months after closing—*i.e.*, February 10, 2018—those representations cannot form the basis of a breach of contract claim.

Under Georgia law, "[t]he general law of survival of terms and conditions is that those found in the sales contract do not survive the closing unless specifically reserved or unless they are not performed by delivery and acceptance

---

[38]   ECF 19, ¶ 54. *See also* ECF 19-1, at 9 ¶ 5.1(v).

[39]   ECF 19-1, at 24 ¶ 18 (emphasis added).

of the deed." *Savage v. KGE Assocs. Ltd. P'ship*, 260 Ga. App. 770, 774 (2003) (citing *Worthey v. Holmes*, 249 Ga. 104, 105 (1982); *P.B.R. Enters. v. Perren*, 243 Ga. 280, 282 (1979)). The contractual representations are "merge[d] into the deed at closing and are therefore considered as eliminated, abandoned, or discarded." *Rampura, LLC v. Main & 75 Ctr., LLC*, No. 1:06-cv-515-CAP, 2008 WL 3861203, at *7 (N.D. Ga. Feb. 13, 2008) (citing *Toys 'R' Us v. Atlanta Econ. Dev. Corp.*, 195 Ga. App. 195, 198 (1990)). *See also Bickerstaff Real Estate Mgmt., LLC v. Hanners*, 292 Ga. App. 554, 557 (2008) ("[T]he purchase agreement contains no clause that indicates that its warranties or any other provision survived the closing. There is also no evidence that the provisions in the agreement had not been performed at the time of the delivery and acceptance of the deed. . . . Thus, the warranty in paragraph 17(i) of the purchase agreement did not survive the closing of the transaction.").

The Purchase Agreement here is clear: Cadillac Fairview's representation in Section 5.1 merged into the Limited Warranty Deed six months after the August 10, 2017 closing. After that date, the representation in Section 5.1 is considered "eliminated, abandoned, or discarded." *Rampura*, 2008 WL 3861203, at *7. It is undisputed that Courtesy did not file a claim prior to the end of the survival period. As such, the representation is now void and cannot form the basis of Courtesy's current breach of contract claim. Count II must be dismissed.

### ii.   Fraudulent Inducement Against Cadillac Fairview (Count V)

Courtesy alleges Cadillac Fairview made false representations—and concealed material facts—concerning the condition of the Property to induce the execution of the Purchase Agreement and subsequent closing. To state a claim for fraudulent inducement, Courtesy must allege "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *JPMorgan Chase Bank, N.A. v. Durie*, 350 Ga. App. 769, 771 (2019) (citing *Stafford v. Gareleck*, 330 Ga. App. 757, 762 (2015)). Under Georgia law, "a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." *Legacy Acad., Inc. v. Mamilove, LLC*, 297 Ga. 15, 17 (2015) (citing *Ekeledo v. Amporful*, 281 Ga. 817, 819 (2007)). Courtesy does not allege it has sought to rescind the Purchase Agreement. Instead, it has asserted both a breach of contract and fraud claim based on the Purchase Agreement without including a rescission claim. Given this posture, Courtesy has clearly chosen the first of its two options—suing for breach. *E.g., Ainsworth v. Perreault*, 254 Ga. App. 470, 472 (2002).

The next inquiry is whether Courtesy can seek damages against Cadillac Fairview for the alleged fraudulent inducement. Cadillac Fairview argues the

fraudulent inducement claim is barred by a merger clause in the Purchase Agreement. "Where an allegedly defrauded party affirms a contract which contains a merger or disclaimer provision and retains the benefits, he is estopped from asserting that he relied upon the other party's misrepresentations in entering the agreement and his action for fraud must fail." *Giacomantonio v. Romagnoli*, 306 Ga. App. 26, 31 (2010) (citing *Ekeledo*, 281 Ga. at 819). *See also Novare Grp., Inc. v. Sarif*, 290 Ga. 186, 190 (2011) ("Where a purchaser affirms a contract that contains a merger or disclaimer provision, he is estopped from asserting reliance on a representation that is not part of the contract.") (citing *First Data POS, Inc. v. Willis*, 273 Ga. 792, 795 (2001)).

Section 17 of the Purchase Agreement contains a conspicuous merger clause:

> This Agreement supersedes all prior discussions and agreements between Seller and Purchaser with respect to the Property and contains the sole and entire understanding between Seller and Purchaser with respect thereto. All promises, inducements, offers, letters of intent, solicitation, agreements, commitments, representations, and warranties heretofore made between such parties with respect to the Property are merged into this Agreement.[40]

---

[40]   ECF 19-1, at 24 ¶ 17.

Notwithstanding, Courtesy alleges Cadillac Fairview made false, pre-contractual representations that the "Property was a 'pad ready' site that was ready for construction."[41] Courtesy also contends Cadillac Fairview intentionally concealed "the presence of foreign object debris, trash, unsuitable fill, and other hazardous substances or waste at the [Property]," as well as the "true state of the soil."[42] Courtesy circles back to Section 5.1 and argues Cadillac Fairview "had a contractual duty to disclose its actual knowledge of the hazardous materials," but "chose to conceal the facts from Courtesy."[43] Put another way, Courtesy's fraudulent inducement claim is two-fold and premised on (1) alleged pre-contractual misrepresentations, and (2) alleged misrepresentations in the Purchase Agreement itself.

Regarding the first category, these pre-contractual promises are clearly barred by the merger clause. Once the parties reduced their agreement to a final, written contract containing a merger clause, "all prior negotiations, understandings, and agreements on the same subject" were extinguished. *First Data*, 273 Ga. at 784. Thus, Courtesy cannot claim reliance on any

---

[41]   ECF 19, ¶ 70.

[42]   *Id*. ¶¶ 40–41.

[43]   ECF 35, at 10.

representation by Cadillac Fairview that the Property would be "pad ready" because there is no such representation in the Purchase Agreement itself. *Id*. ("As a matter of law, a valid merger clause executed by two or more parties in an arm's length transaction precludes any subsequent claim of deceit based upon pre-contractual representations.").

The second category of alleged misrepresentations raise a different issue. A merger clause will not bar a fraudulent inducement claim when the allegedly defrauded party "relied upon misrepresentations in the contract itself." *Authentic Architectural Millworks, Inc. v. SCM Grp. USA, Inc.*, 262 Ga. App. 826, 828 (2003) (citing *Gaines v. Crompton & Knowles Corp.*, 190 Ga. App. 863, 866 (1989)). *See also Chhina Family P'ship, L.P. v. S-K Grp. of Motels, Inc.*, 275 Ga. App. 811, 813 (2005) ("[A] valid merger clause does not prohibit a claim based upon a misrepresentation in the contract itself."). As noted, in Section 5.1 of the Purchase Agreement, Cadillac Fairview represented that "no hazardous materials . . . are present on the Property at levels that require removal, remediation or other corrective action under applicable laws, ordinances, rules and regulations."[44] Courtesy alleges this representation is false and points to the foreign object debris,

---

[44]   ECF 19-1, at 9.

trash, unsuitable fill, 200 automotive tires, and other hazardous substances and waste it discovered under the surface of the Property. Treating Courtesy's well-pleaded allegations as true, this portion of its fraudulent inducement claim is not barred by the merger clause. *E.g.*, *Chhina Family P'ship*, 275 Ga. App. at 813; *Authentic*, 262 Ga. App. at 828.

But that is not the end of the inquiry. Fairview also argues Courtesy's fraudulent inducement claim—premised on alleged misrepresentations in the Purchase Agreement itself—should have been brought as a breach of contract claim. In support, Cadillac Fairview points the Court to *Infinity Transportation III LLC v. XPO Intermodal, Inc.*, 304 F. Supp. 3d 1320, 1331 (N.D. Ga. 2018). The court in that case affirmed the rule that "a valid merger clause will not bar claims based on misrepresentations made in the contract itself," but found the plaintiff's negligent misrepresentation claim must be dismissed as an "improper attempt[ ] to repackage its breach of contract claim into various torts." *Id*. The court reiterated that the "general rule in Georgia is that a breach of contract cannot constitute a tort unless a special or confidential relationship exists between the parties. . . . [T]he defendant may not convert its breach of contract claim against the plaintiff into a tort for alleged negligent misrepresentation."). *Id*. (citing *Cives Corp. v. Se. Invs., LLC (LA)*, No. 1:12-cv-2279-RLV, 2014 WL 11822760, at *5 (N.D. Ga. Apr. 14, 2014);

*Kin Chun Chung v. JPMorgan Chase Bank, N.A.*, 975 F. Supp. 2d 1333, 1344–45 (N.D. Ga. 2013)). *See also Willis v. Allstate Ins. Co.*, 321 Ga. App. 496, 501 (2013) ("The general rule in Georgia is that a breach of contract cannot constitute a tort unless a special or confidential relationship exists between the parties.").

Courtesy did not address this specific argument in its response brief. This is particularly troublesome, as "it is well settled that the party asserting the existence of a confidential relationship has the burden of establishing its existence." *Willis*, 321 Ga. App. at 501 (brackets omitted). *See also Miracle Mile Trucking & Logistics LLC v. Progressive Mountain Ins. Co.*, No. 1:18-cv-1694-CC, 2019 WL 4415964, at *5 (N.D. Ga. Sept. 16, 2019) ("A mere failure to satisfy contractual duties does not give rise to liability in tort."). The Court notes that, in the Amended Complaint, Courtesy pointed to O.C.G.A. § 12-8-40.1 as a basis for Cadillac Fairview's liability as to the 200 used automotive tires alleged buried under the Property. But that statute concerns the removal and disposal of scrap tires; it does not create an independent disclosure obligation. That duty here solely derives from Section 5.1 of the Purchase Agreement. Since Courtesy's fraudulent

inducement claim—as currently pled—relates only to a breach of contractual duties, it cannot be brough as an independent tort. Count V is dismissed.[45]

### b.    Atkins's Motion to Dismiss

On June 26, 2020, Atkins filed its motion to dismiss.[46] On July 10, Courtesy filed its response in opposition to that motion.[47] Atkins filed its reply on July 31.[48]

### i.    Breach of Contract Against Atkins (Count I)

Courtesy alleges Atkins breached the Atkins Agreement by failing to "perform its required services with that degree of care, skill, and ability ordinarily expected of prudent professionals and engineers in Georgia and under similar circumstances."[49] Atkins argues the claim must be dismissed because Courtesy does not state what contractual provision it allegedly breached.

Under Georgia law, a breach of contract claim cannot survive a motion to dismiss if the plaintiff "has not alleged any general or specific provision of any

---

[45]  Because Courtesy's substantive claims against Cadillac Fairview must be dismissed, Courtesy lacks a valid, underlying basis for pursing punitive damages or attorney's fees against Cadillac Fairview. As such, those claims (Counts VIII and IX) must be dismissed against Cadillac Fairview as well.

[46]  ECF 31.

[47]  ECF 37.

[48]  ECF 46.

[49]  ECF 19, ¶¶ 50–51.

contract that defendant might have breached." *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020). *See also Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1327 (11th Cir. 2005) (affirming dismissal of breach of contract claim because plaintiff could "point to no contractual provision which [defendant] ha[d] breached"); *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1296 (N.D. Ga. 2015) ("[A] plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss."); *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1369 (N.D. Ga. 2006) ("Because [plaintiff] cannot point to any contractual provision that [defendant] breached by failing to act in the manner set forth above, [plaintiff] cannot state a claim for breach of contract based on these allegations."). As stated, in the Amended Complaint, Courtesy alleges Atkins failed to satisfactorily perform its services. But Courtesy does not point to any general or specific contractual duty or provision that Atkins allegedly breached. Although Courtesy attaches the entirety of the Atkins Agreement to the Amended Complaint, it is a multi-faceted agreement in which Atkins agreed to provide numerous different services to Courtesy. At bottom, Courtesy's vague allegations do not meet the pleading standard.

Notably, in its response in opposition to Atkin's motion to dismiss, Courtesy points to the "Scope of Services" attachment to the Atkins Agreement.[50] According to Courtesy, Atkins breached the provisions of this attachment by knowingly "issuing defective plans to Courtesy."[51] But, as emphasized by Atkins, Courtesy cannot premise its claim on the Scope of Services attachment because it expressly excludes "[g]eotechnical analysis and construction material testing of any kind or type" from the scope of work.[52] Therefore, this does not supply a valid basis to support Courtesy's contract claim. Count I must be dismissed.

### ii.    Fraud and Negligent Misrepresentation Against Atkins (Counts IV and VI)

Courtesy alleges Atkins—through its employee, Kakunes—intentionally or negligently made false representations concerning the condition of the Property. Atkins argues both claims must be dismissed because Courtesy has failed to plead them with particularity and has not sufficiently alleged reliance. Like fraudulent inducement, Courtesy's claim for fraud contains five elements: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and

---

[50]    ECF 19-3, at 3–4.

[51]    ECF 37, at 5.

[52]    ECF 19-3, at 6.

(5) damages." *Home Depot U.S.A., Inc. v. Wabash Nat. Corp.*, 314 Ga. App. 360, 367 (2012). Similarly, the "essential elements of a claim of negligent misrepresentation are (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Id.* (punctuation omitted). The same principles apply to both claims; "the only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed." *Bowden v. Med. Ctr., Inc.*, 845 S.E.2d 555, 564 n.10 (Ga. 2020) (citing *Holmes v. Grubman*, 286 Ga. 636, 640 (2010)). For both claims, Courtesy must satisfy a heightened pleading standard and "state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). *See also Intellicig USA LLC v. CN Creative Ltd.*, No. 1-15-cv-01832-AT, 2016 WL 5402242, at *8 n.8 (N.D. Ga. July 13, 2016) ("It is by now fairly clear that Rule 9(b) applies to negligent misrepresentation claims in the Eleventh Circuit.").

The first element of both causes of action "require[s] a showing of an affirmative misrepresentation or, in appropriate cases, evidence of suppression of a material fact." *Prince Heaton Enters.., Inc. v. Buffalo's Franchise Concepts, Inc.*, 117 F. Supp. 2d 1357, 1360 (N.D. Ga. 2000). Indeed, a "negligent misrepresentation

claim cannot stand without an alleged misrepresentation." *Arch Ins. Co. v. Clements, Purvis & Stewart, P.C.*, 850 F. Supp. 2d 1371, 1373 (S.D. Ga. 2011). In the Amended Complaint, Courtesy alleges Atkins intentionally or negligently made two misrepresentations:

> Atkins, by and through its employee Mr. Kakunes, [told] Plaintiff on April 12, 2018 by email that DeKalb Pipeline's detection of topsoil at depths greater than 6 inches was wrong; and

> Atkins, by and through its employee Mr. Kakunes, [told] Plaintiff on April 12, 2018 by a separate email that there was not a shot rock placed on the Dealership Property.[53]

Courtesy does not, however, allege with sufficient particularity the circumstances surrounding these statements that render them fraudulent or misleading.

For example, in the first referenced email, Kakunes did not state that DeKalb Pipeline's finding was "wrong," but stated: "Please refer to the attached geotechnical report that shows a topsoil thickness ranging from 3" to 6"; they **may** have hit a couple of isolated pockets with a slightly thicker amount [of] topsoil."[54]

---

[53]   ECF 19, ¶ 62.

[54]   ECF 31-3, at 2 (emphasis added). In resolving this motion to dismiss, the Court may rely on the exhibits Courtesy attached to its Amended Complaint, which are adopted as part of the pleadings for all purposes. Fed. R. Civ. P. 10(c). When the "documents attached to the complaint . . . contradict the general and conclusory allegations of the pleading, the exhibits govern." *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 967 (11th Cir. 2019) (citing *Griffin*

Courtesy cannot base an affirmative fraud claim on Kakunes's speculation that DeKalb Pipeline may have reached an incorrect conclusion. *E.g., Am. Casual Dining*, 426 F. Supp. 2d at 1364 (dismissing fraudulent misrepresentation claim because "a false representation made by a defendant, to be actionable, must relate to an existing fact or a past event. Fraud cannot consist of mere broken promises, unfulfilled predictions or erroneous conjecture as to future events").

Courtesy likewise misconstrues Kakunes's second email. According to Courtesy, Kakunes represented that "there was not a shot rock placed on the [ ] Property." But in the relied-on email, Kakunes clearly states: "There was no shot rock placed in any location at the ***surface*** of the site."[55] The statement relied on by Courtesy to support its claim makes no reference to the subsurface conditions of the Property. Courtesy's only response is to speculate that Kakunes must have misspoken or made a typo in the email.[56] Such speculation—particularly when contradicted by the plain language of the relied-on evidence—is not enough to

---

*Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). *See also Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1245 (11th Cir. 2016) ("The *Griffin* principle applies if the exhibits plainly show that the complaint's allegations are untrue by providing specific factual details that foreclose recovery as a matter of law.") (punctuation omitted).

[55]   *Id.* at 3. (emphasis added).

[56]   ECF 37, at 9–10 n.2.

state a facially plausible claim. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). *See also DIRECTV, LLC v. Stanley Wells*, No. 1:13-cv-28 WLS, 2013 WL 6036686, at *2 (M.D. Ga. Nov. 13, 2013) (dismissing negligent misrepresentation counterclaim because "Defendants have not provided any factual support for their allegation that [plaintiff] made any 'misrepresentations' . . . aside from their conclusory allegations"). As noted above, this is true even at the pleading stage. *Alhassid*, 771 F. App'x at 967; *Griffin*, 496 F.3d at 1206.

Even if Courtesy had adequately alleged that Kakunes's emails were misleading, it has not sufficiently alleged reliance. As noted above, "justifiable reliance is an essential element to both fraud and negligent misrepresentation." *Next Century Commc'ns Corp. v. Ellis*, 214 F. Supp. 2d 1366, 1370 (N.D. Ga. 2002). As part of this element, Courtesy must allege due diligence. *E.g., Tri-State Consumer Ins. Co. v. LexisNexis Risk Sols. Inc.*, 823 F. Supp. 2d 1306, 1320 (N.D. Ga. 2011) ("Georgia law places a significant due diligence burden on sophisticated parties engaged in arms-length transactions. . . . . Georgia courts do not afford legal relief when one blindly relies on misrepresentations of the other party as to matters of which he could have informed himself.") (punctuation omitted); *Hartsfield v. Union City Chrysler-Plymouth*, 218 Ga. App. 873, 876 (1995) ("Fraud cannot be the basis of

an action if it appears that the party alleging the fraud had equal and ample opportunity to prevent it and yet made it possible through the failure to exercise due diligence."). While Courtesy need not *prove* due diligence at this stage, bare allegations of "reliance on alleged misrepresentations, bereft of any additional detail, will not suffice under Rule 9(b)." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019) ("Simply alleging the technical elements of fraud without providing . . . underlying supporting details will not satisfy the rule's pleading-with-particularity requirement.") (quoting 5A Charles A. Wright, Arthur R. Miller, & A. Benjamin Spencer, *Federal Practice & Procedure* § 1297, at 46 (4th ed. 2018)).

Here, Courtesy alleges it relied on Kakunes's representations because he "was the civil engineer for Cadillac Fairview's project in getting the [ ] Property in a pad ready condition."[57] Courtesy does not allege what efforts, if any, it took to conduct due diligence and confirm Kakunes's representations. At best, Courtesy's allegations show it blindly relied on Kakunes's emails based on their subjective belief that he and Atkins possessed superior knowledge of the Property's

---

[57]   ECF 19, ¶ 64.

subsurface. This is not enough to state a facially plausible claim among sophisticated parties involved in an arms-length transaction.

Finally, in its response, Courtesy states the general rule that questions of justifiable or reasonable reliance are generally fact-based for the jury's consideration. However, that is not always the case; "[o]ne may fail to exercise due diligence as a matter of law." *Fowler v. Overby*, 223 Ga. App. 803, 804 (1996). *See also Hartsfield*, 218 Ga. App. at 876 ("[Plaintiff's] blind reliance on defendants' representations . . . shows a lack of due diligence which is unjustified as a matter of law."). Here, Courtesy fails to allege any due diligence and relies solely on Kakunes's emails. This is not sufficient. *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1289 (11th Cir. 2007) ("[A] court can find that a party has failed to exercise due diligence as a matter of law where due diligence failures are particularly egregious."). Therefore, Counts IV and VI must be dismissed.

### iii.   Negligence/Gross Negligence Against Atkins (Count VII)

Courtesy alleges Atkins is liable under theories of negligence or gross negligence based on the "breach[ ] [of] their professional duties . . . in a manner that was negligent, careless, reckless, willful, and wanton."[58] Specifically, Courtesy

---

[58]   ECF 19, ¶¶ 79–81.

alleges Atkins "dismissed and ignored" defects in its work product, "failed to timely take appropriate investigative and remedial actions," and instructed Courtesy to perform work based on "flawed reports and services."[59] Atkins argues the claim must be dismissed because it did not owe Courtesy a duty to discover and report subsurface conditions on the Property.

A negligence claim contains four essential elements: "[A] duty, a breach of that duty, causation, and damages." *Collins v. Athens Orthopedic Clinic, P.A.*, 307 Ga. 555, 557 (2019). For the first element, the "misfeasance in the performance of a contractual duty may give rise to a tort action." *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1379 (N.D. Ga. 2004) (citing *Tate v. Aetna Cas. & Surety Co.*, 149 Ga. App. 123, 124–25 (1979)). To maintain an action based on the "breach of duty growing out of a contractual relation[,] the breach must be shown to have been a breach of a duty imposed by law and not merely the breach of a duty imposed by the contract itself." *Johnson*, 351 F. Supp. 2d at 1379 (citing *Mauldin v. Sheffer*, 113 Ga. App. 874, 879–80 (1966)). Put another way, "[i]t is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also

---

[59]   *Id*. ¶ 81.

violates a duty owed to plaintiff independent of contract to avoid harming him."
*Sheppard v. Yara Eng'g Corp.*, 248 Ga. 147, 148 (1981).

Courtesy alleges Atkins knew about the Property's subsurface conditions based on Kakunes's knowledge and observations gained while the latter worked for QORE.[60] To that end, Courtesy argues Atkins owed it "professional duties" to disclose that knowledge in two ways: (1) when Atkins "present[ed] Courtesy with grading plans which did not, [ ] nor could not, result in a balanced site"; and (2) through Kakunes, who is "a professional engineer . . . licensed to practice in Georgia."[61] According to Courtesy, these duties are premised on the general rule that:

> The law imposes upon persons of professional standing performing medical, architectural, engineering, and those performing other and like skilled services, pursuant to their contracts made with their clients, an obligation to exercise a reasonable degree of care, skill and ability, such as is ordinarily exercised under similar conditions and like circumstances by persons employed in the same or similar professions.

---

[60] *E.g.*, ECF 19, ¶¶ 20, 42–45. Atkins argues that Courtesy's allegations are insufficient to demonstrate that Kakunes garnered such knowledge, which is allegedly imputed to Atkins through its subsequent purchase of QORE.

[61] ECF 37, at 13.

*Mauldin*, 113 Ga. App. at 880. *See also Johnson*, 351 F. Supp. 2d at 1379 ("[P]ersons of this class performing services pursuant to their contracts with their clients have been held liable in tort for their negligence in failing to exercise the required degree of skill, and thus to be liable to a suit in tort under the doctrine applicable to misfeasance or the negligent performance of the contract.").

Treating Courtesy's allegations as true, it has plausibly articulated that Atkins owed it a duty to disclose as part of the reports Atkins prepared regarding the condition of the Property. Unlike Courtesy's fraudulent inducement claims against Cadillac Fairview, Courtesy ties this duty to an independent obligation created by law, not simply the breach of a contractual provision. As such, Count VII survives the motion to dismiss.[62]

### c.    S&ME's Motions

On July 7, 2020, S&ME filed a motion to strike and objection to the Huckaba Affidavit, which Courtesy attached to its Amended Complaint.[63] Two days later,

---

[62]    Since Courtesy's fraud claim against Atkins must be dismissed, it lacks an underlying basis to seek punitive damages under Georgia law. *See Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 118 (1988) ("Negligence, even gross negligence, is inadequate to support a punitive damage award."). Therefore, Count VIII must also be dismissed against Atkins. However, because Courtesy may proceed with Count VII, it maintains a valid basis to seek its attorney's fees. Count IX shall remain in this action against Atkins.

[63]    ECF 34.

S&ME filed its motion to dismiss.[64] On July 30, Courtesy filed separate responses in opposition to these motions.[65] S&ME filed a reply in support of its motion to dismiss on August 13, 2020,[66] but did not file a reply as to its motion to strike.

### i.      S&ME's Motion to Strike

S&ME requests that the Court strike the Huckaba Affidavit for three reasons: (1) it is "immaterial and impertinent because it cannot be considered . . . at this stage of the litigation"; (2) it "presents scandalous allegations based on documents that are not in the record, and are not attached to the Affidavit"; and (3) it is "defective because it relies on documents that have not been properly authenticated and presented legal conclusions as opinions."[67] Motions to strike are governed by Federal Rule of Civil Procedure 12(f). This rule permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are disfavored and viewed as "a drastic remedy to be resorted to only when required for the purposes of justice." *TracFone Wireless, Inc. v. Zip Wireless Prod., Inc.*, 716

---

[64]   ECF 36.

[65]   ECF 44; ECF 45.

[66]   ECF 48.

[67]   ECF 34, at 3.

F. Supp. 2d 1275, 1290 (N.D. Ga. 2010) (citing *Stephens v. Trust for Pub. Land*, 479 F. Supp. 2d 1341, 1346 (N.D. Ga. 2007)). As S&ME aptly notes, since Rule 12(f) only contemplates the striking of a pleading, courts in this district routinely find that a motion to strike "is not the appropriate vehicle for challenging the consideration of evidence." *Green v. ADCO Int'l Plastics Corp.*, No. 1:17-cv-337-WSD-LTW, 2017 WL 8810690, at *5 (N.D. Ga. Dec. 27, 2017), *report and recommendation adopted*, No. 1:17-cv-337-WSD-LTW, 2018 WL 739794 (N.D. Ga. Feb. 7, 2018). *See also Nelson v. Jackson*, No. 1:14-cv-02851-ELR-JFK, 2016 WL 9454420, at *1 (N.D. Ga. May 18, 2016), *report and recommendation adopted as modified*, No. 1:14-cv-02851-ELR, 2016 WL 9455425 (N.D. Ga. June 30, 2016) ("Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike."). Instead, these motions are often treated as a notice of objection to the evidence that has been offered. *Id. See also Chavez v. Credit Nation Auto Sales, Inc.*, 966 F. Supp. 2d 1335, 1344 (N.D. Ga. 2013); *Exceptional Mktg. Grp., Inc. v. Jones*, 749 F. Supp. 2d 1352, 1358 (N.D. Ga. 2010).

Recognizing this dichotomy, S&ME styles its motion as both one to strike and a notice of objection to Huckaba's affidavit. The Court finds the latter approach persuasive for purposes of ruling on S&ME's motion to dismiss. In fact, in its opposition to S&ME's dismissal motion, Courtesy proposes a compromise;

that the Court "explicitly decline to consider the [Huckaba] Affidavit when ruling on [the] pending motions to dismiss."[68] Given the early stage of this case, the Court will do just that. S&ME's motion to strike is **DENIED**, but the Court will not consider the Huckaba Affidavit as part of the resolution of the motion to dismiss.

### ii.    S&ME's Motion to Dismiss

S&ME raises challenges to each claim asserted against it by Courtesy in the Amended Complaint. The Court addresses each in turn.[69]

### 1.    Breach of Contract Against S&ME (Count III)

Nearly verbatim to its claim against Atkins, Courtesy alleges S&ME breached the S&ME Agreement by "failing to perform its required services with that degree of care, skill, and ability ordinarily expected of prudent professionals and engineers in Georgia and under similar circumstances."[70] Like Atkins, S&ME contends this claim must be dismissed because Courtesy has not sufficiently alleged that it breached any provision of the S&ME Agreement. As discussed

---

[68]   ECF 45, at 5.

[69]   The Court notes that, in its motion to dismiss, S&ME raised a defense under Georgia's statute of repose as to the construction work performed by its predecessor, QORE. O.C.G.A. § 9-3-51(a). In its response, Courtesy posited that the statute of repose is irrelevant to this action; it is not seeking to hold S&ME liable for the allegedly faulty construction work performed by QORE. As such, the Court need not address these arguments in this Order.

[70]   ECF 19, ¶ 59.

above, Courtesy must allege specific, factual conduct that actually breaches an obligation established by the agreement. *See supra* Section III.b.i. But, like its claim against Atkins, Courtesy does not point to any contractual provision that S&ME allegedly breached. Courtesy's vague allegations that S&ME did not perform services in a satisfactory manner do not meet the pleading standard. Count III must be dismissed.[71]

### 2. Negligence/Gross Negligence Against S&ME (Count VII)

Courtesy's allegations supporting its negligence claim against S&ME are verbatim to its negligence claim against Atkins. Courtesy alleges S&ME breached its professional duties to perform its work in a satisfactory manner by dismissing and ignoring defects, failing to investigate or take remedial actions, and instructing Courtesy to perform work based on flawed reports and services.[72] S&ME argues Courtesy's negligence claim must be dismissed because (1) Courtesy

---

[71] S&ME additionally argues that Courtesy's claim for consequential damages must be dismissed based on an explicit clause in the S&ME Agreement entitled "DISCLAIMER OF CONSEQUENTIAL DAMAGES" [ECF 19-4, ¶ 8]. However, Courtesy only seeks consequential damages against S&ME in its breach of contract claim (Count III). The Court has already determined that Courtesy's breach of contract claim must be dismissed. Thus, the Court need not address the enforceability of this clause under Georgia law at this time.

[72] *Id.* ¶¶ 19–81.

is barred by a merger clause in the S&ME Agreement from premising its claim on any alleged representation made by S&ME; and (2) Courtesy's allegations are factually impossible based on the content in the First S&ME Report.

S&ME's first argument is misplaced. Courtesy has not asserted a fraud or fraudulent inducement claim against S&ME. Both of S&ME's cited authorities—*Infinity Transportation III LLC v. XPO Intermodal, Inc.*, 304 F. Supp. 3d at 1330 and *Ekeledo v. Amporful*, 281 Ga. at 819—are distinguishable because neither court addressed a negligence claim. Unlike a fraud claim, justifiable reliance is not an element of a negligence claim. Nonetheless, S&ME is correct that the court in *Infinity Transportation* went further and stated that "this principle bars not only fraud claims based upon the alleged, pre-contract misrepresentations, but ***all tort claims*** based upon such misrepresentations." 304 F. Supp. 3d at 1330 (emphasis added). But here, Courtesy's negligence claims are premised on the allegedly unsatisfactory work performed by S&ME, not on alleged misrepresentations. At bottom, the presence of a merger clause does not bar this negligence claim.

The Court is likewise unpersuaded by S&ME's second argument. According to S&ME, its actions could not have induced Courtesy to purchase the Property because they did not execute the S&ME Agreement until after Courtesy had already purchased the Property. What is more, avers S&ME, Courtesy's

allegations are contrary to the recommendations contained in the First S&ME Report. But these arguments again misconstrue Courtesy's claim. Courtesy alleges S&ME acted negligently by failing to meet the required professional standard in the performance of its services. Treating Courtesy's well-pleaded allegations as true, this negligence claim is not foreclosed by the First S&ME Report. Even if S&ME were correct that Courtesy could not rely on an alleged failure to disclose the presence of certain materials on the Property—a finding the Court does not make at this juncture—this still would not warrant dismissal of the entire negligence claim, which is broader in scope.[73] At bottom, Count VII survives the motion to dismiss.[74]

---

[73] S&ME also argues its total liability in this case must be capped at $100,000 based on a clause in the S&ME Agreement entitled "LIMITATION OF LIABILITY" [ECF 19-4, ¶ 7]. Under Georgia law, "exculpatory clauses in which a business seeks to relieve itself from its own negligence are valid and binding in this State, and are not void as against public policy unless they purport to relieve liability for acts of gross negligence or wilful or wanton conduct." *Monitronics Int'l, Inc. v. Veasley*, 323 Ga. App. 126, 135 (2013). However, since the clause in the S&ME Agreement does not completely exculpate S&ME from all liability, but rather purports to cap its liability exposure, the Court need not determine its enforceability at this stage of the case.

[74] As with Courtesy's claims against Atkins, because the only claim against S&ME that survives the motion to dismiss is for negligence, Courtesy lacks an underlying basis to pursue punitive damages against S&ME. *See Colonial Pipeline*, 258 Ga. at 118. Thus, Count VIII must be dismissed against S&ME. However, Courtesy may proceed with its attorney's fee claim in Count IX.

## IV.    CONCLUSION

Cadillac Fairview's motion to dismiss [ECF 26] is **GRANTED**. Counts II, V, VIII, and IX are **DISMISSED** against Cadillac Fairview. Atkins's motion to dismiss [ECF 31] is **GRANTED IN PART and DENIED IN PART**. Counts I, IV, VI, and VIII are **DISMISSED,** but Courtesy may proceed with Counts VII and IX against Atkins. S&ME's motion to strike [ECF 34] is **DENIED**. S&ME's motion to dismiss [ECF 36] is **GRANTED IN PART and DENIED IN PART**. Counts III and VIII are **DISMISSED**, but Courtesy may proceed with Counts VII and IX against S&ME. Within 21 days of this Order, Atkins and S&ME shall file their respective Answers to the remaining portions of the Amended Complaint. Within 30 days of this Order, the remaining parties shall file their Joint Preliminary Report and Discovery Plan.

SO ORDERED this the 28th day of December 2020.

Steven D. Grimberg
United States District Court Judge